### RISLEY v. VILLAGE OF HOWELL.

(Circuit Court, E. D. Michigan. July 22, 1893.)

#### No. 7,846.

1. CONSTITUTIONAL LAW—LEGISLATIVE POWER—MUNICIPAL BONDS.

The legislature of Michigan has no power to authorize a municipality to submit to its electors a proposition to issue bonds in aid of a railroad. People v. Salem, 20 Mich. 452, and Bay City v. State Treasurer, 23 Mich. 499, followed.

2. RAILROAD COMPANIES—MUNICIPAL AID—"IMPROVEMENT" BONDS—VALIDITY.

The legislature of Michigan, which had no power to authorize a municipality to issue bonds in aid of a railroad, passed an act authorizing the electors of a village to vote an issue of bonds to make "public improvements" in the village, the money to be expended under the direction of the council "for the purpose aforesaid." The electors having duly voted in favor of the proposition, the council passed an ordinance declaring that a certain railroad was "a public improvement in the village," and directing the issuance and delivery of the bonds to an agent of the railroad company. *Held,* that the action of the council was unlawful, and the bonds were invalid.

3. SAME—INNOCENT PURCHASERS—RECITALS.

Each bond, as thus issued, was styled on its face "Improvement Bond," but also referred by date to the ordinance in question as one source of authority for its issuance. *Held,* that this reference was notice of the provisions of the ordinance, and of its invalidity, and the bonds were void, even in the hands of innocent purchasers

At Law. Action by Oliver H. K. Risley against the village of Howell, Mich., on certain bonds and coupons. Judgment for defendants.

Statement by SWAN, District Judge:

This is an action of assumpsit for the recovery of the amount of bonds Nos. 5, 6, 7, 8, of the village of Howell, Mich., and 10 interest coupons, each for $30, belonging to said bonds, and also of 37 interest coupons for $30 each,

formerly attached to other bonds of the same issue. The total amount claimed, with interest to the day of trial, is $5,726.70. These bonds bear date August 12, 1885, and form a part of an issue of 20 bonds of $1,000 each, and were in the following form, viz.:

"No. ———. $1,000.00.

"The United States of America.

[Michigan Coat of Arms.]

"State of Michigan, Village of Howell. Improvement Bond.

"Know all men by these presents that the village of Howell, in the state of Michigan, acknowledges to owe and promises to pay to J. M. Ashley, Jr., or bearer, one thousand dollars, lawful money of the United States of America, on the first day of ———, in the year of our Lord one thousand eight hundred and ———, at the Fourth National Bank in the city of New York, with interest at the rate of six per cent. per annum, payable semiannually on the first days of December and June in each year on the surrender of the annexed coupons as they severally become due. This bond is issued under and by authority of the special act of the state of Michigan entitled 'An act to authorize the village of Howell to raise money to make public improvements in the village of Howell, being No. 248 of the Local Acts of 1885 of the legislature of the state of Michigan,' approved February 25, 1885, and also under the ordinance of the village of Howell passed August 12, 1885.

"In testimony whereof the said village of Howell has caused these presents to be signed by the president and recorder of said village, and to be sealed with the seal of said village, this twelfth day of August, A. D. 1885.

[Seal.] [Sgd.] "Jay Corson, President.

[Sgd.] "Geo. H. Chapel, Recorder."

The act of the legislature referred to in the bonds authorized the common council of the village of Howell "to borrow money on the faith and credit of said village, and issue bonds therefor to an amount not exceeding $20,000, which shall be expended in making public improvements in said village of Howell: provided, that a majority of the electors of said village voting at an election to be called in compliance with the provisions of this act shall vote in favor of such loan in the manner specified in this act and not otherwise." Section 2 of the act provided how the question of raising the said sum by loan should be submitted to the electors of the village, and empowered the common council to order a special election if it should deem it necessary. "Sec. 3. If such loan shall be authorized by a majority of such electors, said bonds may be issued in such sums, not exceeding the amount hereinbefore limited, and payable at such times, with such rates of interest, not exceeding six per centum per annum, as the said common council shall direct, and shall be signed by the president of said village, and countersigned by the recorder of said village, and negotiated by or under the direction of said common council; and the money arising therefrom shall be appropriated in such manner as said common council shall determine for the purpose aforesaid; and the said common council shall have power, and it shall be their duty, to raise by tax upon the taxable property of said village such sum or sums as shall be sufficient to pay the amount of said bonds and the interest thereon as fast as the same shall become due." This act was approved February 25, 1885. Local Acts 1885, p. 16. Pursuant to the authority conferred by section 2, the common council, on March 5, 1885, voted to call a special election to submit to the electors of the village "the question of raising money on the faith and credit of said village to the amount of $20,000, with interest not exceeding six per cent. per annum, to be secured by the bonds of said village, and signed by the president and countersigned by the recorder of said village, payable, principal and interest, at such time or times as the common council may direct, for the purpose of making public improvements in said village of Howell." This was the only question submitted to the electors. The election was ordered to be had March 23, 1885, and 10 days' notice thereof was directed to be given. Such notice was given in the manner required by law and the vote of the common council. Neither the sufficiency of the notice nor the regularity of the registration or election is

questioned. The registration books show that the number of the registered electors of the village was 554. The total vote cast was 433, of which 427 were "for the loan" and 6 "against the loan."

On the 12th day of August, 1885, a special meeting of the common council of the village was held, at which the proceedings were had which constitute the ordinance of August 12, 1885, referred to in the bonds as in part the authority for their issue. That ordinance reads as follows: "Whereas, by virtue of the special act of the legislature of the state of Michigan the village of Howell is authorized to issue bonds in the sum of not more than $20,000, and to bear interest at not more than six per cent., in aid of public improvements in the village of Howell; and whereas, on the 23d day of March, A. D. 1885, the majority of the electors voted in favor of said loan. Now, therefore, resolved, by the common council of the village of Howell, that by virtue of said act and said vote thereon, that the said village borrow and loan the said sum of $20,000.00 at six per cent. per annum, payable semiannually on the first day of June and December of each year until paid, the sum of $20,000 for making public improvements in said village of Howell. And resolved, that the Toledo, Ann Arbor & North Michigan Railroad Company is a public improvement in the village of Howell. And resolved, that the bonds of the village of Howell be issued to the amount of $20,000.00, with interest at six per cent. per annum, payable on the first day of June and December until paid; payable $2,000 on the first day of January, A. D. 1888, $2,000 on the first day of June, A. D. 1889, $2,000 on the first day of December, A. D. 1890, $2,000 on the first day of June, A. D. 1891, $2,000 on the first day of December, A. D. 1892, $2,000 on the first day of June, A. D. 1893, $2,000 on the first day of December, A. D. 1894, $2,000 on the first day of June, A. D. 1895, $2,000 on the first day of December, A. D. 1896, $2,000 on the first day of June, A. D. 1897, in aid of said Toledo, Ann Arbor & North Michigan Railroad Company, payable to James M. Ashley, Jr., agent of said railroad company, or bearer, but not to be delivered to said James M. Ashley, Jr., or the company, except in accordance with the contract this day made between said James M. Ashley, Jr., and said railroad company and the said common council of the village of Howell. And the president of the said village is hereby authorized and directed to sign said bonds, and the recorder of said village is hereby authorized and directed to countersign said bonds, and to sign the coupons attached thereto."

This ordinance was duly signed and filed, and appears of record in the proceedings of the common council. The bonds were signed by the president and countersigned by the recorder of the village, and by the direction of the council were sent by express to the Fourth National Bank of New York, to be filed in escrow until the railroad commissioner of Michigan should certify that the Toledo, Ann Arbor & North Michigan Railroad had been completed to Howell in the manner stipulated between the council and J. M. Ashley, Jr., the representative of the railroad company, and the payee of the bonds. The railroad was completed to Howell, and Ashley performed the contract with the common council which was made the condition of his right to the bonds, and they were delivered on his order. The whole issue was negotiated by him to different persons, through some of whom plaintiff bought for value and before maturity, and without actual notice of any infirmity in them.

Luke S. Montague, for plaintiff.

Edwin F. Conely and Orla B. Taylor, for defendant.

SWAN, District Judge, (after stating the facts.) It is conceded that the entire issue of bonds of which those here in suit are part were delivered to the Fourth National Bank of New York, and by that bank were turned over to J. M. Ashley for the consideration set forth in the ordinance of the common council of the village of Howell recited above. There is no evidence that the plaintiff or his

predecessors in the ownership of the bonds, except Ashley, had any other notice of the purpose and circumstances under which they were issued than that imparted by the reference on their face to the ordinance of August 12, 1885, passed by the common council of the village of Howell. The questions are: (1) Was the issue of the bonds for the purpose for which they were given authorized by law? and, (2) if not so authorized, were the purchasers chargeable with notice of their invalidity by reason of the express mention on the face of the bonds of the ordinance of August 12, 1885?

It is clear that under the laws of Michigan the legislature could not lawfully authorize the submission to the electors of a municipality of a proposition to issue its bonds in aid of a railroad. People v. Salem, 20 Mich. 452; Bay City v. State Treasurer, 23 Mich. 499. It is equally clear that the act of February 25, 1885, did not sanction the submission of that question, nor was the question submitted, to the vote of the electors. The common council, by the ordinance in question, formally enacted that the issue of bonds voted for "public improvements in said village of Howell" should be issued for and devoted to the benefit of the Toledo, Ann Arbor & Northern Michigan Railroad Company. This action was manifestly and undeniably unlawful. The common council not only exceeded its authority, but acted without authority. That body could not by its fiat make that a "public improvement" for which the legislature itself could not authorize the municipality to expend money or create indebtedness.

Each of the securities on its face is styled "Improvement Bond." Had there been nothing on these instruments to challenge the attention of a purchaser to the ordinance, and had they omitted all reference thereto, and had these recitals made mention only of the statute of February 25, 1885, as the authority for their issue, the effect of that recital on the liability of the village would be presented. The express reference to the ordinance of August 12, 1885, as one of the sources of authority for the issue of the bonds confines the inquiry, on this feature of the case, to the effect of that reference upon the rights of the purchasers of the bonds. Unfortunately for the plaintiff, this question is concluded by controlling authority. "Ordinarily the recital of the fact that the bonds were issued in pursuance of a certain ordinance would be notice that they were issued for a purpose specified in such ordinance." Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. Rep. 819. See, also, Post v. Pulaski Co., 1 C. C. A. 405, 49 Fed. Rep. 628. The purpose specified in the ordinance being unlawful, the bonds in suit were not authorized obligations of the village of Howell. Their invalidity was notified to the purchaser by the ordinance, of which he was bound to take notice.

For these reasons judgment must be entered for the defendant, with costs.