## TRUSTEES OF GERMAN TOWNSHIP v. FARMERS & CITIZENS SAV. BANK CO.

Common Pleas Court, Montgomery County.

No. 103750.   Decided May 14, 1953.

Mathias H. Heck, Pros. Atty., Dayton, for plaintiff.
Cowden, Pfarrer & Crew, Dayton, for defendant.

### OPINION

By MILLS, J.

This is an action by the trustees of German Township, Montgomery County, Ohio, against The Farmers & Citizens Savings Bank Company, an Ohio corporation, with its principal office in Germantown, Montgomery County, Ohio.

Plaintiff prays, in the amended petition, that:

(a) A lease, dated March 25, 1873, between the trustees of German Township, Montgomery County, Ohio, and the late

David Rohrer, also of said county and state. whereby the said trustees leased to the said David Rohrer the premises described in said lease for the term of ninety-nine years, renewable forever, from April 27, 1872, be declared null and void;

(b) A deed, dated May 6, 1910, from the trustees in bankruptcy of the said David Rohrer and conveying the leasehold interest to the defendant, be declared null and void;

(c) The defendant be directed to quitclaim to the plaintiff its interest in the leased premises, and in default of so doing, that the decree of court operate and be considered as such;

(d) The title of plaintiff in such real estate be quieted against all claims of defendant;

(e) The defendant be enjoined from interfering or depriving plaintiff of the peaceful use, possession and occupancy of the leased premises; and

(f) For such other and further relief as may be just and proper in law and in equity.

The facts in the case for the most part have been stipulated and agreed to and are not in dispute. In addition to the written stipulation of facts, the court at the hearing of April 15, 1953, received additional stipulation of facts and evidence.

The court finds from the written stipulation of facts, (1) That on March 26, 1872 the General Assembly of the State of Ohio passed an act.

"To authorize the Trustees of German Township, Montgomery County, Ohio, to lease the premises on which they have commenced the erection of a town hall." Reported in 69 Ohio Laws 230,

which act contains the following provisions:

"Whereas, a majority of the qualified electors of German Township, Montgomery County, voted at a general election held in said township on the first Monday in April, 1871, voted in favor of levying a tax for the purpose of erecting a town hall, for the use of said township, in accordance with an act passed April 2, 1866 (Ohio Laws, Vol. 84; S. & S. 783), and

"Whereas, a large portion of said tax has been collected, the site for said building purchased, and the foundation and cellar constructed; and

"Whereas, it appears ʼdesirable to erect business rooms in connection with said town hall; therefore

"Section 1. Be it enacted by the General Assembly of the State of Ohio, that the trustees of German township, Montgomery County, are hereby authorized to lease the premises on which they have commenced the erection of a town hall, to be one or more individuals for a period of ninety one years,

renewable forever; provided, said individual or individuals shall erect on said premises, the first story of a substantial building, in accordance with a plan to be furnished by said trustees, and shall permit said trustees to erect on said first story, a town hall for the use of said township; and provided further, that before leasing said premises as above specified, the trustees shall give fifteen days' notice by advertisement in some newspaper of general circulation in said township, or by posting written or printed notices in at least three conspicuous places in said township of the time and place of said letting; and at the time and place specified, they shall let the same at public vendue to the highest and best bidder. The rent for said premises shall be payable semi annually for the use of the township, and the trustees shall have a lien on said premises and the appurtenances therefor.

"Section 2. Said trustees shall let said premises as above provided, on or before May 10, 1872, and the individual or individuals leasing the same shall, within ten days after said letting, enter into a bond with surety, and payable to said German township, in such sum as may be required by said trustees, conditioned for the erection of said business rooms, in accordance with the plan and specifications furnished by said trustees, on or before the 15th day of September, 1872, and the said trustees shall also be bound for and on behalf of said German township, to erect said town hall over said business rooms, or at least inclose and roof the same on or before the 15th day of December, 1872.

"Section 3. This act to take effect on its passage."

(2) That David Rohrer, the lessee, did erect the first story of a building on the premises described in said Act of March 25, 1872, and as mentioned in the lease attached to the petition of the plaintiff, which lease is dated March 26, 1873.

(3) That the trustees of German Township erected a town hall for the use of the Township on the first story of the building erected by David Rohrer, as provided in the Act of March 26, 1872.

(4) That David Rohrer entered into possession and control of the leased premises under and in accordance with the terms and conditions of the lease, which was introduced into evidence as Plaintiff's Exhibit A, and remained in possession and control until his interest was sold, for valuable consideration, to the defendant on May 6, 1910, which conveyance was introduced in evidence and marked "Mutual Exhibit C." Defendant has since May 6, 1910, been in possession and control of said premises.

(5) That at the time the lease was executed the trustees

acknowledged and the lease recites that David Rohrer had "fulfilled the conditions imposed by the said Act of Legislature."

(6) That the rentals payable for said premises to the trustees by David Rohrer and the defendant have been paid for all yearly periods beginning with the date of leasing and have been accepted by the trustees.

(7) That all taxes levied and assessed on the leasehold and the building have been paid for all years, including all taxes levied and assessed by or for the benefit of German Township.

(8) That all other terms and conditions of the lease have been performed by the lessee.

(9) That the premises leased to David Rohrer and the first story of the building erected by him on the leased premises (except so much of the first story reserved to and by the trustees) since the date said premises were leased, have been continuously and exclusively in the possession and use of David Rohrer and the defendant, and

(10) That during the period from the date of the leasing of said premises to the date of the filing of the petition herein, no action has been filed by the trustees of German Township, or any other body, to recover possession of said leased premises, to the best of plaintiff's knowledge and belief.

The court finds from the evidence adduced at the hearing of this case on April 15, 1953, that none of the present trustees, all of whom testified, ever read any of the minutes of the trustees of German Township for the years 1872 and 1873, and that such minute books were missing, although search had been made for the book or books.

That one of the trustees, John H. Schroeder, testified among other things that he was born in the year 1870; that he remembers that the town hall building was in existence in the year 1873, one of his earliest memories; that the town hall itself has always been located on the second story of the building in question; that the first story of the building has always consisted of business rooms; that the "corner room" of said building was once occupied by a dry goods store owned by a man named Rott; and further, that until the date of the filing of this action, there was never any dispute between the defendant, or its predecessor in title, David Rohrer, concerning the leasehold.

The written stipulation of facts was introduced into the record and marked "Mutual Exhibit B." A certified copy of the lease of March 25, 1873, was introduced as "Mutual Exhibit A," and a certified copy of the deed of May 6, 1910, from the

trustees of David Rohrer, bankrupt, to the defendant, was introduced and marked "Mutual Exhibit C."

It was stipulated and agreed by counsel that Defendant's Exhibits 1, 2, 3, 4 and 5 are photostatic copies of pages of newspapers published and of general circulation in Germantown and German Township, Montgomery County, Ohio, the originals of which newspapers are in the possession and custody of the Dayton Public Library.

Defendant's Exhibit 1 is a photostat of page 2 of the April 5, 1872 issue of the Germantown Weekly Dollar Times.

Defendant's Exhibit 2 is a photostat of page 3 of the April 12, 1872 issue of the Germantown Weekly Dollar Times.

Defendant's Exhibit 3 is a photostat of page 3 of the May 3, 1872 issue of the Germantown Weekly Dollar Times.

Defendant's Exhibit 4 is a photostat of page 3 of the May 24, 1872 issue of the Germantown Weekly Dollar Times.

Defendant's Exhibit 5 is a photostat of page 3 of the April 11, 1873 issue of the Germantown Times.

Each of these newspapers is more than eighty years old and the originals are in the custody and possession of the Dayton Public Library, the natural depository of all items of local history.

Each of these exhibits was offered into evidence by counsel for defendant over the objection of counsel for plaintiff. It is the opinion of the court that they should have been received as exhibits not only as the originals of the publications required to be made by the trustees by the Act and by general law as then in effect, but also by reason of the fact that such exhibits, by reason of age, alone, and unquestioned authenticity, qualify as ancient documents.

Defendant's Exhibit 1 dated April 5, 1872 contains the local publication of the Act of March 26, 1872, an item of local historical importance.

Defendant's Exhibit 2, dated April 12, 1872 is the original of the notice by advertisement required by the Act and discloses that the letting by "public vendue to the highest and best bidder" was scheduled to take place April 27, 1872, and further that:

"The plans and specifications of the building to be erected thereon and the conditions required of the lessee, can be seen at the Township Clerk's office."

Defendant's Exhibit 3, dated May 3, 1872, under the caption "Those Business Rooms," discloses that:

"The letting of the foundation cellar, &c., of the Town Hall site, took place on Saturday last. At first it looked as if nobody would bid, but finally the contest became warm, ending

with David Rohrer, who now has the same for ninety nine years renewable forever, at $81 per annum. Work will be commenced at once, as the building will be under roof before the opening of another autumn."

Defendant's Exhibit 4, dated May 24, 1872, is the original of an advertisement by the trustees of German Township, first published May 10, 1872, for proposals for the mason work of the town hall to be erected by the trustees. This exhibit contains the following item of local notoriety and historical importance:

"The contract for building the Town Hall was awarded to Christian Dechance on Monday evening, at $12 per thousand brick in the wall. Only two bids were received on Saturday and the Board refused to act until further conference. Work will be commenced just as soon as stone can be got and the brick burned."

Defendant's Exhibit 5 dated April 11, 1873, is a matter of local notoriety and historical importance, and discloses that a New Fancy Dry Goods Store, operated by one E. Rott, had been opened in the New Town Hall Building.

The court finds that the lease, while dated and apparently executed March 25, 1873, specifies and recites:

(a) That the period of the lease is for ninety nine years from April 27, 1872, and

(b) That David Rohrer, as the second party, had "fulfilled the conditions imposed by the said Act of the Legislature."

April 27, 1872, was the date specified as the date of letting at public vendue as disclosed by the advertisement contained in Defendant's Exhibit 2. It was also the date when David Rohrer became the successful bidder as disclosed by Defendant's Exhibit 3. Thus it must be concluded, and it is the court's opinion, that the date of beginning of the period of the lease, and as specified in the instrument itself, was actually the date of letting at public vendue as provided in the Act of March 26, 1872, under authority of which the lease was made. It is apparent from the circumstances that the actual date of acquisition of the leasehold interest by David Rohrer was April 27, 1872. In no other manner can the apparent difference between the date of execution of the lease instrument on March 25, 1873, and the date of the beginning of the period of the lease be explained.

Defendant's Exhibit 4 shows that the trustees first advertised for proposals for the mason work on the town hall on May 10, 1872, and the contract was let to Mr. Dechant on May 20, 1872. While Exhibit 5 shows that the building constructed by Rohrer was occupied on April 11, 1873, a date but

seventeen days later than the date of apparent signing of the lease instrument.

In view of the recital in the lease instrument itself that David Rohrer had fulfilled all the conditions imposed by the Act, the burden of proof to establish the falsity of such a statement, assuming that evidence to that purpose could be admissible, would be with the plaintiff. But even so, the accuracy of the recital is fully established by the exhibits submitted by the defendant. Thus, it seems to the court, all elements of conjecture are removed. The plaintiff, not being able to produce any evidence that the contract between the trustees and David Rohrer was not let on April 27, 1872, will now be estopped from denying that said contract was let upon that date because of the acknowledgement in the lease executed between the trustees and Rohrer.

See **City of Cleveland v. Raynolds, 76 Oh St 619, 81 N. E. 1182; 77 Oh St 631,** citing **Ensel v. Levy, 46 Oh St 255, 259,** 19 N. E. 597; **Kinney v. Cincinnati, L. & N. R. Co., 77 Oh St 609,** 84 N. E. 1129.

In Village of Kent v. Dana, 6 Cir., 100 F. 56, 57, the court held:

"A municipal corporation having the power to issue bonds for the refunding of its indebtedness, and having exercised that power by passing an ordinance * * * to that purpose, and by issuing negotiable bonds in due form, reciting that they are issued in conformity with the statute, and that all the requirements of the law have been duly complied with, and all the conditions precedent exist, cannot deny its obligation as against a bona fide holder, who purchased such bonds for value, before maturity, and defeat recovery thereon, by showing that the recitals are false, and were made for the purpose of enabling the corporation to market the bonds, which were in fact issued for an unauthorized and illegal purpose."

And in Clapp v. Village of Marice City, 6 Cir., 111 F. 103, 108, the court said:

"* * * and when it is recited, as it is in these bonds, that all the preliminary steps required by law had been taken by the village, its officers and agents, the village is estopped from objecting that the certificate of some of its officers, which was by law required to be filed as a preliminary step, was not in fact filed."

The Supreme Court of Ohio, in the case of **Shoemaker v. Trustees of Goshen Township, 14 Oh St 569,** at **page 588,** said:

"The claims of good faith and common honesty are as obligatory upon corporations and communities as upon individual natural persons. And that they may be thus estopped is not an open question in this state."

See also **16 O. Jur. 575, Section 23.**

The lease instrument, the deed and defendant's exhibits one through five are ancient documents and prove themselves. The rule concerning particular instruments as ancient documents is stated in 20 Am. Jur. 786, "Evidence," paragraph 934, as follows:

"Generally speaking, any writing or document otherwise admissible as evidence, which appears to be more than thirty years old and to have come from proper custody, may be offered as an ancient document without proof of its execution. Under this rule letters, leases, deeds, title bonds and other bonds, powers of attorney, receipts, official maps, and public surveys, which are of sufficient age, valid on their face, bear no indication of having been altered or are otherwise free from suspicion and which come from the proper custodian, are admissible in evidence without further proof."

Thus, Mutual Exhibit A, the lease instrument, qualifies as an ancient document, as does the deed of May 6, 1910. Each proves itself.

And wholly aside from the fact that Defendant's Exhibits 2, 3 and 4 are original advertisements by the trustees of German Township for bids and proposals for the letting of the premises and the building of the town hall, they too are ancient documents, relevant to the subject of inquiry, and admissible into evidence, and prove themselves.

For the same reasons, and by virtue of the same circumstances, the news items of local notoriety and historical importance shown in Defendant's Exhibits 1, 3, 4, and 5 are ancient documents, relevant to the inquiry, admissible into evidence and prove themselves.

That the subjects of these news items were public matters of local notoriety and historical importance is evidence on the face of the exhibits themselves, and in this regard such items are the subject of judicial notice since they deal with the community at large.

In the case of Commonwealth ex rel. Ferguson v. Ball, 277 Pa. 301, 121 A. 191, 192, 29 A. L. R. 626, at page 629, the Supreme Court of Pennsylvania, in discussing the ancient document rule and matters of local history said:

"Judicial notice may be taken of the existence of public matters, such as general history known to the community at large, or salient facts of local history known generally in the particular community."

Whatever the honest doubt may be or have been in the minds of the present trustees, successors to the trustees of 1872 and 1873, concerning compliance with the provisions of the

Act of March 26th, 1872, such honest doubt should be entirely removed by the exhibits introduced into the record of this case. Nothing has been introduced into the record to contradict or cause any doubt on the subject.

The Act of March 26, 1872 found in Volume 69, Ohio Laws, page 230, was local in its nature, but was pursuant to a series of Acts amending an Act passed February 24, 1948, which is reported in Swan & Critchfield, page 1481, which authorized the township trustees, in every township in the state of Ohio, to erect town halls under certain conditions, and one of the conditions, was that it be submitted to the general public.

While it was a local law, it was of general application throughout the state for all townships and villages. The Act of 1848, and ensuing acts, including the one under which the town hall of Germantown was built, were held to be constitutional. See **State ex rel. Hibbs v. Board of County Commissioners, 35 Oh St 458,** decided in 1880.

However, on April 20, 1896, the Supreme Court of Ohio, in **Hixson v. Burson, 54 Oh St 470,** 43 N. E. 1000, 1001, in deciding a special act authorizing the commissioners of a given county to construct a particular road, overruled at least in part the decision in the Hibbs case, but differentiated between acts of a local nature and those of a general nature. The court says:

"But how are we to determine whether a given subject is of a general nature? One way is this: If the subject does or may exist in, and affect the people of, every county in the state, it is of a general nature. On the contrary, if the subject cannot exist in, or affect the people of every county, it is local or special. A subject-matter of such general nature can be regulated and legislated upon by general laws having a uniform operation throughout the state; and a subject-matter which cannot exist in, or affect the people of, every county, cannot be regulated by general laws having a uniform operation throughout the state, because a law cannot operate where there can be no subject-matter to be operated upon."

See also Norton v. Trustees of Montville Twp., decided 1894, 8 Ohio Cir. Ct. R. 335.

Thus, there can be no question that the Act of March 26th, 1872, was local in its nature and not prohibited by **Section 26, Article II, of the Ohio Constitution.** Langdon v. Trustees of Columbia Township, XIV W. L. B. 325; **Hopple v. Trustees of Brown Tp., 13 Oh St 311;** Trustees of Harrison Tp. v. Harrison Tp., 5 Ohio N. P., N. S., 354, decided by Judge Snediker of the Common Pleas Court of Montgomery County, Ohio.

Assuming that the Act of March 26, 1872 is unconstitutional and is a violation of **Section 26, Article 2 of the Constitution of Ohio,** the courts have held that townships, cities and villages would be estopped from setting up such a defense.

342

In the case of **City of Mt. Vernon v. State, 71 Oh St 428,** 73 N. E. 515, the court held:

"Where a municipal corporation has entered into a contract with an individual under and by virtue of a statute which is unconstitutional, and the subject-matter of the contract is not ultra vires, illegal, or malum prohibitum, and the facts are such, as against the corporation, as would estop an individual from setting up as a defense the unconstitutionality of the statute, the municipal corporation will also be so estopped."

Counsel for defendant stress the statute of limitations as one of their defenses as a bar to plaintiff's recovery, claiming they have held adversely for more than twenty-one years, and complying with all the elements of adverse possession.

Quoting from **1 O. Jur. 2d, page 769, Art. 88, page 770, Art. 89:**

"The elements of estoppel were present in one of the early cases holding that municipalities are subject to the statute of limitations in the same manner as natural persons, and many subsequent cases indicate a willingness to follow the early decisions, not on the principles of adverse possession, but on the principles of equitable estoppel where the necessary elements are present."

This court is of the opinion the necessary elements of estoppel are present in the instant case.

In making a lease a township is the agency of the state, the same as a county is the agency of the state acting through its commissioners; the township acts through its trustees, and when the township as an agency of the state acts in the buying or selling or leasing of property, it acts within its proprietary capacity and not within its governmental capacity. Estoppel applies even against the state under such circumstances. **State v. Ex'r of Buttles, 3 Oh St 309; State ex rel. Upper Scioto Drainage & Conservancy Dist. v. Tracy, Auditor of State, 125 Oh St 399, 181 N. E. 811.**

The courts have also held that the doctrine of estoppel, where the state is acting in a proprietary capacity, is applicable even if the law under which it is proceeding is unconstitutional.

The court finds that German Township of Montgomery County, Ohio, having received all benefits of the lease for a period of more than eighty years, and having by their conduct repeatedly ratified the terms of the lease, common honesty and the claims of good faith serve to estop the trustees from questioning the validity of the lease in question.

The court, therefore, finds that all relief prayed for in plaintiff's petition be denied, and that plaintiff's petition be dismissed at plaintiff's costs.