*370
 
 Marshall, C. J.
 

 The authority to levy an assessment upon abutting property to pay for street improvements in a municipality is found in Section 3812 of the General Code, and no other author^ exists. That section provides, in part, as follows: “The council of any municipal corporation may assess upon the abutting, adjacent and contiguous or other specially benefited lots or lands in the corporation, any part of the entire cost and expense connected with the improvement of any street, * * * by * * * paving, # * * which the council may declare conducive to the public health, convenience or welfare, by any of the following methods. * * *
 

 “Third: By the foot front of the property bounding and abutting upon the improvement.”
 

 It is insisted by the Attorney General that while there is undoubted authority, in a general way, for the city to make the assessment, it is not sufficient to justify an assessment against a school district. We are referred to
 
 Toledo
 
 v.
 
 Bd. of Edn.,
 
 48 Ohio St., 83, 26 N. E., 403, and
 
 Bd. of Edn.
 
 v.
 
 Toledo,
 
 48 Ohio St., 87, 26 N. E., 404.
 

 The right to levy an assessment against school property was denied in those eases, and it was further declared that a judgment cannot be rendered against the board of education for the payment of the amount of the assessment out of the contingent fund of the board. It was therefore left to be paid out of the general fund of the city. Both opinions were brief
 
 per ouriams,
 
 and no reasoning was indulged to support the same. Those cases were decided in the year 1891, and this court since that time has never dealt with
 
 *371
 
 the question. In 1884 this court decided the case of
 
 Lima
 
 v.
 
 Cemetery Ass’n.,
 
 42 Ohio St., 128, 51 Am. Rep., 809. It was there held that while the property of an incorporated cemetery association not exceeding 100 acres of land is exempted from taxation, and also exempted from execution, if used exclusively for burial purposes and in no wise with a view to profit, nevertheless the municipality is empowered to levy the assessment. The character of that action does not clearly appear from the statement of facts, and we are unable to determine whether it was a suit to recover judgment. But the court declared in the fourth paragraph of the syllabus:
 

 “While the lands of an incorporated cemetery association, so far as exempted, cannot be sold to pay an assessment for the improvement of a street, the municipal corporation may enforce the assessment by such remedies as the statute and courts of equity afford.”
 

 Disregarding for the moment the question of the manner of proceeding to collect assessments against cemetery associations and boards of education, it is quite certain that so far as power and authority to levy the assessment are concerned, Section 3812 confers as much power in the one case as in the other. This court having upheld the power as against the cemetery association in a well-reasoned opinion, and having denied the power as against a board of education without reasoning the point, and the
 
 Toledo cases
 
 not having overruled or even referred to the
 
 Lima case,
 
 we are disposed to regard the
 
 Lima case
 
 as a much more valuable authority. The
 
 Lima case
 
 lays down some very perti
 
 *372
 
 nent observations in the syllabus, which have a conclusive bearing upon the instant case, as follows:
 

 “(1) In a general sense, a tax is an assessment, and an assessment is a tax; but there is a well-recognized distinction between them, an assessment being confined to local impositions upon property for the payment of the cost of public improvements in its immediate vicinity, and levied with reference to special benefits to the property assessed.
 

 “(2) A municipal corporation, insisting on the right to impose an assessment, should be able to show that such power has been clearly granted to it by statute; but, authority being shown, in general terms, to make the assessment, whoever insists that his property is exempted from the burden will be required to support his claim by a provision equally clear.
 

 “ (3) An incorporated cemetery association is not relieved from an assessment for a street improvement by a statutory provision exempting its lands from taxation, such exemption being regarded as confined to taxes as distinguished from local assessments. ’ ’
 

 The court found in that case that authority was shown, in general terms, to make the assessment, and nothing was found in any of the legislation on the subject to exempt such property from that general authority. The
 
 Toledo cases
 
 not having overruled or even discussed the
 
 Lima case,
 
 it must be assumed that in the
 
 Toledo cases
 
 the judgment was reached upon the ground that there was a difference between a board of education and a
 
 *373
 
 cemetery association, so far as the power to collect such an assessment is concerned. On no other theory can the cases be reconciled.
 

 Section 3812, General Code, gives general authority to levy an assessment, which assessment is levied against the property itself. If that authority for levying against the property creates a debt against the owner of property in the case of a cemetery association, then, by parity of reasoning, it must also create a debt against a board of education. The statutes relating to levies of taxes by boards of education have undergone sweeping changes from time to time since the decision of the
 
 Toledo cases.
 
 At that time Section 3958, Revised Statutes (81 Ohio Laws, 178), conferred upon a board of education the authority to levy taxes to create a “contingent fund for the continuance of the school or schools of the district, after the state funds are exhausted, to purchase sites for schoolhouses, to erect, purchase, lease, repair, and furnish schoolhouses, and build additions thereto, and for other school expenses.”
 

 Several other important changes were made from time to time, and in 1904, for the first time (97 Ohio Laws, 349), the Legislature provided that levies of taxes for school purposes should be divided into four funds; viz., tuition fund, building fund, contingent fund, and sinking fund. This division of levies into separate funds was continued through the subsequent amendments of Section 3958, Revised Statutes, which section later became Sections 7586 and 7587, General Code; but the Legislature, in 1925 (111 Ohio Laws, 379), repealed that portion of Section 7587, General Code, providing for
 
 *374
 
 separate funds. The assessment against the Cedar-ville township rural school district was made at a time when the law providing for four separate funds was still in effect.
 

 In addition to above changes in the powers and duties of boards of education, another statute having an important bearing upon this question has come into existence (Section 5649-lc, G-eneral Code) and requires boards of education to provide for the payment of final judgments against such boards in all cases except in condemnation of property. It is quite certain, therefore, at this time, that if there was any difficulty about collecting a judgment from a board of education prior to 1922, at which time that statute was in force, there can be no question on that point at the present time. It would seem, therefore, that the only pedestal upon which the
 
 Toledo cases
 
 could have been made to rest has, by later legislation, been removed.
 

 If the Cedarville rural school district were identical with Cedarville village, there would be no injustice in permitting the assessment to be paid out of the general fund of the village. To compel the board of education of the village to levy a tax to pay the assessment would be in no sense different from compelling the council of the village to levy a tax upon the same property for the same ultimate purpose. The school district, however, not being identical with the village, if the assessment should be paid out of the general fund of the village all the patrons of the school, including those in the township outside of the village as well as those within the village, would be equally bene
 
 *375
 
 fited, and yet those patrons of the school outside of the village would have nothing to pay. The injustice of such a result would be shocking.
 

 We have not, however, reached our conclusions upon considerations of justice or injustice, but we find ample general authority in Section 3812 for making the assessment, and nowhere do we find any exemption of boards of education from the operation of that general authority.
 

 We find further that the statutes now make ample provision for levies of taxes for payment of improvements upon school property and for payment of assessments levied by other taxing authorities, under the provisions of Section 3812. The levy of the assessment upon the abutting property belonging to the rural school district created a debt against the board of education, in every respect as valid as if a contract had been made for the same improvement by the board of education itself. If the board of education should not voluntarily make a levy to pay the assessment, the board could be compelled to do so by a writ of mandamus. We have therefore reached the conclusion that the assessment is valid and that the county treasurer may maintain an action to recover the amount of the assessment so levied.
 

 The judgment of the Court of Appeals will therefore be reversed, and the judgment of the court of common pleas will be affirmed.
 

 Judgment reversed.
 

 Day, Allen, Kinkade and Eobinson, JJ., concur.